# EXHIBIT A
# (PART 5 OF 6)

# EXHIBIT 10

# Last Will and Testament

## OF

## SUSAN KRAUS

**I, Susan Kraus**, a resident of and domiciled in the State of New York, County of New York, at ▮▮▮▮▮▮▮▮▮▮▮ New York, New York, make, publish and declare this to be my Last Will and Testament, revoking all wills and codicils at any time heretofore made by me.

**FIRST**: I direct that the expenses of my last illness and funeral, the expenses of the administration of my estate, and all estate, inheritance and similar taxes payable with respect to property included in my estate, whether or not passing under this will, and any interest or penalties thereon, shall be paid out of my residuary estate, without apportionment and with no right of reimbursement from any recipient of any such property (including reimbursement under Section 2207B of the Internal Revenue Code).

**SECOND**: I give and bequeath to my husband David Kraus, if he survives me, the smallest portion of my estate, if any, required to be given to my husband under applicable law, after taking into account the aggregate value of any other property passing to him under this will or otherwise.

**THIRD**: I give, devise and bequeath all the rest, residue and remainder of my property and estate, both real and personal, of whatever kind and wherever located, that I own or to which I shall be in any manner entitled at the time of my death (collectively referred to as my "residuary estate"), as follows:

(a) To those of my children (Leslie Graham Clayton, Jed Graham and Brett Graham) who survive me and to the issue who survive me of those of my children who predecease me, per stirpes. If, however, any such beneficiary then shall be under the age of thirty-five (35) years (each such child being hereinafter referred to as a "Beneficiary"), the share of such Beneficiary shall not be paid or distributed to such Beneficiary but instead shall be given to my Trustee and held by my Trustee, **IN TRUST**, pursuant to the following provisions:

(I) My Trustee shall hold, manage, invest and reinvest each share set aside for each Beneficiary in a separate trust for the benefit of such Beneficiary and shall pay all or any part of the net income from each such trust to or for the benefit of the Beneficiary thereof, for the health, education, maintenance and support of the Beneficiary, to such extent and at such time or times and in such manner as may be



determined in the absolute discretion of my Trustee. Any net income not so paid shall be accumulated and added to principal at least annually and thereafter shall be held, administered and disposed of as a part thereof.

(ii)  In addition, my Trustee may pay to or for the benefit of each Beneficiary, for the health, education, maintenance and support of each Beneficiary, from the principal of each Beneficiary's trust, such amounts, including the whole thereof, as determined in the absolute discretion of my Trustee.

(iii)  When any Beneficiary shall attain the age of twenty-five (25) years, one third of the principal of such Beneficiary's trust then remaining shall be paid and distributed to such Beneficiary.  When any Beneficiary shall attain the age of thirty (30) years, one half of the principal of such Beneficiary's trust then remaining shall be paid and distributed to such Beneficiary.  If any Beneficiary is twenty-five (25) years of age or older, but under thirty (30), upon the creation of such Beneficiary's trust, one third of the principal of such Beneficiary's trust then remaining shall be paid and distributed to such Beneficiary, discharged of trust.  If any Beneficiary is thirty (30) years of age or older upon the creation of such trust, two thirds of the principal of such Beneficiary's trust then remaining shall be paid and distributed to such Beneficiary, discharged of trust.

(iv)  When any Beneficiary shall attain the age of thirty-five (35) years, the trust for such Beneficiary shall terminate and any remaining principal and income shall be paid and distributed to such Beneficiary, discharged of trust.  If such Beneficiary dies before said age, such principal and income shall be paid and distributed to, or held in further trust for the benefit of, such one or more persons, corporations or other entities (other than such Beneficiary, creditors of such Beneficiary, the estate of such Beneficiary, or creditors of the estate of such Beneficiary), to such extent, in such amounts and proportions and in such lawful interests or estates, whether absolute or in trust, as such Beneficiary may appoint by specific reference to this power of appointment in the last will and testament of such Beneficiary, executed after attaining majority and admitted to probate, or absent such appointment (or absent my Trustee receiving notice of the existence of such a will within 3 months after the death of such Beneficiary) such principal and income shall be paid and distributed to any then living issue of such Beneficiary, per stirpes, or if such Beneficiary has no issue to my then living issue, per stirpes.  If any

2



such issue is a beneficiary of a trust under this will, the same may be held in accordance with such trust. If there are no then living issue, the same shall be paid and distributed to the beneficiaries of my residuary estate then in being as provided in this will.

**FOURTH**: I authorize my Executor, in addition to any rights conferred by law and in the absolute discretion of my Executor, and without the consent of any court having jurisdiction over my estate, to disclaim or renounce, in whole or in part or with respect to specific amounts, parts, fractional shares or assets, any legacy, devise, or interest in or privilege or power over any trust or other disposition provided for my benefit under the will or other instrument of any person at any time within nine months after the date of the transfer (whether by reason of such person's death or otherwise) which created an interest in me.

I authorize any person, in addition to any rights conferred by law, at any time within nine months after my death, to disclaim or renounce, in whole or in part or with respect to specific amounts, parts, fractional shares or assets, any devise, legacy, interest, right, privilege, or power granted to that person by this will. Any such disclaimer or renunciation shall be made by a duly acknowledged, irrevocable, written instrument executed by that person or by his or her conservator, guardian, committee, attorney-in-fact, executor, or administrator, delivered to my Executor and filed with the clerk of the appropriate court.

**FIFTH**: The determination of my Trustee as to the amount or advisability of any discretionary payment shall be final and conclusive on all persons, whether or not then in being, having or claiming any interest in such trust.

No disposition, charge or encumbrance on any income or principal of any trust hereunder or my estate by any beneficiary thereof shall be valid or binding upon my Executor or Trustee. No beneficiary shall have the right to assign, transfer, pledge, encumber, anticipate or otherwise dispose of any such income or principal until the same shall be paid to such beneficiary by my Executor or Trustee. No such income or principal shall be subject in any manner to any claim of any creditor of any voluntary or involuntary creditor of any beneficiary or liable to attachment, execution or other legal or equitable process prior to its actual receipt by the beneficiary. The right of any beneficiary to any income or principal hereunder shall be subject to all charges or deductions which my Executor or Trustee may make under law or any provision of this will. Upon making any payment of income or principal from any trust hereunder or my estate, my Executor and Trustee shall be released fully from all further liability therefor.

**SIXTH**: If any principal or income of my estate or any trust hereunder vests in absolute ownership in a minor or incompetent, my Executor or Trustee, at any time and without court authorization, may: distribute the whole or any part of such property to the beneficiary; or use the whole or any part for the health, education, maintenance and support of the beneficiary; or distribute the whole or any part to a guardian, committee or other legal representative of the beneficiary, or to a custodian for the beneficiary (including a custodian appointed by my Executor or Trustee without

3



court order) under any gifts to minors or transfers to minors act, or to the person or persons with whom the beneficiary resides. Evidence of any such distribution or the receipt therefor executed by the person to whom the distribution is made shall be a full discharge of my Executor and Trustee from any liability with respect thereto, even though my Executor or Trustee may be such person.

If such beneficiary is a minor, my Executor or Trustee may defer the distribution of the whole or any part of such property until the beneficiary attains the age of twenty-one (21) years, and may hold the same as a separate fund for the beneficiary with all of the powers described in Article SEVENTH hereof. If the beneficiary dies before attaining said age, any balance shall be paid and distributed to the estate of the beneficiary.

The word "minor" wherever used in this Article SIXTH shall mean any person who shall be under the age of twenty-one (21) years.

**SEVENTH**: My Executor and Trustee shall have all of the powers provided in the New York Estates, Powers and Trusts Law, as amended, or any successor thereto, and the powers conferred by law upon fiduciaries in every jurisdiction in which my Executor and Trustee may act. In addition, the following powers are conferred upon both my Executor and Trustee, exercisable in the absolute discretion of my Executor and Trustee, as the case may be:

(a) To retain and hold any property for any period, whether or not the property is of the character permissible for investment by fiduciaries under any applicable law, and without regard to the effect the retention may have upon diversification of investments.

(b) To sell, exchange, grant options on, transfer or otherwise dispose of any property, real or personal, at public or private sale, for cash or on credit, secured or unsecured, at such time or times, in such manner and upon such terms and conditions as my Executor or Trustee shall deem advisable.

(c) To invest and reinvest in common or preferred stocks, bonds, securities, mortgages, investment trusts, common trust funds, mutual funds, regulated investment companies, evidences of rights or interests, and other property, real or personal, domestic or foreign, whether or not the investments are permissible for fiduciaries under any applicable law and without regard to diversification.

(d) To render liquid my estate or any trust in whole or in part, at any time and from time to time, and to hold cash or readily marketable securities of little or no yield for such periods as my Executor or Trustee shall deem advisable.

(e) To manage, maintain, repair, alter, improve, insure, partition, subdivide, lease for any term (whether or not beyond any period fixed by statute for leases made by fiduciaries or beyond the term of any trust created hereunder), mortgage, encumber,

4



grant security interests in, or otherwise purchase, dispose of, or deal with any real or personal property, as my Executor or Trustee shall deem advisable.

(f) To abandon any property which my Executor or Trustee shall deem worthless or not of sufficient value to warrant keeping or protecting; to abstain from the payment of taxes, assessments, repairs, maintenance or other upkeep therefor; to permit any property to be lost by tax sale or other proceedings or to convey any such property for no or a nominal consideration.

(g) To form one or more corporations or limited liability companies, alone or with any person, in any jurisdiction, and to transfer assets of my estate or any trust to any new or existing corporation or limited liability company in exchange for stock or membership interests; to form one or more partnerships with any person in any jurisdiction, to have my estate, any trust or a nominee be a general or limited partner, and to transfer assets of my estate or any trust to any new or existing partnership as a capital contribution; to enter into one or more joint ventures or associations with any person in any jurisdiction, and to commit assets of my estate or any trust to the purposes of those ventures or associations; and to retain as an investment for any period any securities, partnership interests or other assets resulting from any such actions.

(h) To enter into, modify or terminate agreements with any person regarding voting rights, management, operation, retention or disposition of interests in corporations, partnerships, joint ventures, associations or other businesses of my estate or any trust, regardless of whether any agreement is in effect when that business interest is received by my Executor or Trustee; to retain and continue to operate, or permit the operation of, any business, on the terms which governed when received by my Executor or Trustee or on different terms; to invest additional sums in any business, even to the extent that my estate or any trust may be invested entirely in any business, without liability for any loss resulting from lack of diversification; to act as or select other persons (including any beneficiary) to act as directors, officers, managers or employees of any business, with reasonable compensation without regard to their being a fiduciary or beneficiary and, in the case of my Executor or Trustee, without regard to the commissions allowed by law; to discontinue any business or sell or otherwise dispose of any interest therein on such terms and conditions as my Executor or Trustee shall deem advisable; and to make such other arrangements with respect to any business as my Executor or Trustee shall deem advisable. I exonerate my Executor and Trustee from any loss resulting from the retention or operation of any business or any depreciation in the value thereof, unless such loss shall result from the gross negligence or willful misconduct of my Executor or Trustee.

(I) To vote, in person or by general or limited proxy, any shares of stock or other securities; to exercise or dispose of any options, subscription or conversion rights, or



other privileges or rights of any other nature; to become a party to, or deposit securities or other property under, or accept securities issued under any voting trust or similar agreement; to assent to or participate in any reorganization, readjustment, recapitalization, consolidation, merger, dissolution, liquidation, sale or purchase of assets, lease, mortgage, election, contract, agreement, or other action or proceeding by any corporation; to deposit securities or other property under, or become a party to, any agreement or plan for any such action or proceeding or for the protection of holders of securities; to subscribe to new securities or exchange property in connection with the foregoing; to delegate discretionary powers to any reorganization, creditors, stockholders or similar committee or protective group; and to pay any assessments or expenses in connection with the foregoing.

(j)  To pay, collect, adjust, compromise, settle or refer to arbitration any claim in favor of or against my estate or any trust, and to institute, prosecute or defend such legal proceedings as my Executor or Trustee shall deem advisable.

(k)  To foreclose mortgages and bid for property under foreclosure or take title by conveyance in lieu of foreclosure; to continue investments after maturity; to modify, renew or extend any note, bond, mortgage, security agreement or similar instrument upon such terms and conditions as my Executor or Trustee shall deem advisable; to release obligors or guarantors or refrain from instituting suits or actions for deficiencies; and to expend any sums or use any property as my Executor or Trustee shall deem advisable for the protection of any property or interest therein.

(l)  To borrow money or assets for any purpose, without personal liability therefor, from any person including my Executor or Trustee, and to secure repayment by mortgage or pledge of any property.

(m)  To lend assets to any person, including a beneficiary, the estate of a deceased beneficiary, or an estate or other trust in which a beneficiary has an interest, upon any terms and conditions, with or without security, for any purpose which may or will benefit my estate, any trust or any beneficiary.

(n)  To exercise, at such times and in such manner as my Executor or Trustee shall deem advisable, any right of election or other rights which from time to time may be available under the Internal Revenue Code or any other tax law, and to make such other decisions as my Executor or Trustee may deem appropriate with respect to expenses or deductions for estate or income tax purposes, the valuation of assets, the filing of any joint or other income, gift or other tax returns and the apportionment of any joint tax liability, and the payment of any tax or collection of any refund, regardless of the effect of any such action on the interest of any beneficiary of my estate and without the necessity of making adjustments or reimbursements between principal and income or among the beneficiaries of my estate.

6



(o)  To employ and pay the compensation of accountants, attorneys, experts, investment counselors, custodians, agents and other persons or firms providing services or advice, irrespective of whether my Executor or Trustee may be associated therewith; to delegate discretionary powers to such persons or firms; and to rely upon information or advice furnished thereby or to ignore the same, as my Executor or Trustee shall deem advisable.

(p)  To incur and pay any and all costs, charges, fees, taxes, interest, penalties or other expenses of the administration of my estate, in installments with interest if desired, and except as expressly provided in Article FIRST hereof or elsewhere herein, to charge the same against the income or principal, or partly against each, of my estate or any trust.

(q)  To hold property in their names as Executor or Trustee, or in their names without designation of any fiduciary capacity, or in the name of a nominee or nominees, or unregistered, or in bearer form; to deposit property with a custodian or depository; and to remove property from the State of New York and keep property in other jurisdictions, without bond, surety or other security.

(r)  To pay any legacy or distribute, divide or partition property in cash or in kind, or partly in kind, and to allocate different kinds of property, disproportionate amounts of property and undivided interests in property among any trusts, parts, funds or shares, and to determine the fair valuation of the property so allocated, with or without regard to tax basis; to determine what property shall receive basis increases pursuant to Section 1022(b) and (c) of the Internal Revenue Code and the amount of such increases and to make such determinations without regard to any duty of impartiality as between different beneficiaries; to make distributions from my estate prior to the time required by law, without requiring any security or discount, or to withhold distributions without obligation to pay interest by reason thereof, as my Executor shall deem advisable; to distribute directly from my estate to beneficiaries of any trust hereunder whether or not such trust has been funded; to hold the principal of separate trusts (including trusts established under the last will and testament of my husband) in a consolidated fund and to invest the same as a single fund; to split trusts for purposes of allocating generation-skipping transfer tax exemptions (within the meaning of Section 2642(a) of the Code; and to merge any trusts (including trusts established under the last will and testament of my husband) which have substantially identical terms and beneficiaries, and to hold them as a single trust.

(s)  To act or refrain from acting in all respects as if financially uninvolved, regardless of any connection with or investment in any business or any conflict of interest between any fiduciary hereunder and my estate or any trust. No Executor or Trustee shall be disqualified or barred from exercising any power or discretion conferred by law or under this will because such fiduciary may be a shareholder,



officer, director, member, partner or person in any way interested in a corporation, partnership or other person or entity affected by the exercise of such power or discretion. My Executor or Trustee may contract, in any manner that my Executor or Trustee shall deem advisable, with any such corporation, partnership, person or entity.

(t) To change the situs and/or governing law of any trust hereunder to any state my Executor or Trustee from time to time may deem desirable, and to take such further actions, including without limitation the amendment to the terms of the trust, as may be necessary or advisable to effectuate such change.

(u) To do all acts and execute and deliver all instruments as my Executor or Trustee may deem necessary or advisable to carry out any of the foregoing powers.

No fiduciary shall be liable for acts or omissions in administering my estate or any trust created under this will, except for that fiduciary's own actual fraud, gross negligence or willful misconduct. Each fiduciary shall be fully protected in any course of conduct taken in good faith in accordance with the advice of counsel. If any fiduciary becomes liable as fiduciary to any other person who is not a beneficiary in connection with any matter not within the fiduciary's control and not due to the fiduciary's actual fraud, gross negligence or willful misconduct, such fiduciary shall be fully indemnified and held harmless by my estate or by the trust created hereunder giving rise to such liability, as the case may be, from and against any liability, claim, loss, damage or expense, including reasonable attorneys' fees, that such fiduciary may sustain.

No person who deals with any fiduciary hereunder shall be bound to see to the application of any asset delivered to such fiduciary, or to inquire into the authority for, or propriety of, any action taken or not taken by such fiduciary.

**EIGHTH**: In addition to the other powers granted hereunder, my Executor and Trustee shall be entitled to determine the following:

(a) My Executor or Trustee may determine, when there is reasonable doubt or uncertainty as to the applicable law or the relevant facts, which receipts of money or other assets should be credited to income or principal, and which disbursements, commissions, assessments, fees, taxes (except as provided in Article FIRST hereof), and other expenses should be charged to income or principal.

(b) Any distributions or dividends payable in the stock of a corporation, and rights to subscribe to securities or rights other than cash declared or issued by a corporation, shall be dealt with as principal.

(c) The proceeds from the sale, redemption or other disposition, whether at a profit or loss, and regardless of the tax treatment thereof, of any property constituting

8



principal, including mortgages and real estate acquired through foreclosure or otherwise, shall normally be dealt with as principal, but my Executor or Trustee may allocate a portion of any such proceeds to income if the property disposed of produced no income or substantially less than the current rate of return on trust investments, or if my Executor or Trustee shall deem such action advisable for any other reason.

(d) My Executor and Trustee may (but are not directed to) allocate receipts and disbursements between income and principal in accordance with the New York Estates, Powers and Trusts Law, as amended and in effect from time to time.

(e) The preceding provisions of this Article EIGHTH shall not be deemed to authorize any act by my Executor or Trustee which may be a violation of any law prohibiting the accumulation of income.

**NINTH**: If any beneficiary under this will and I (or any other person upon whose death the interest of such beneficiary depends) shall die in a common accident or under circumstances in which it is difficult or impractical to determine who survived the other, then I direct that for purposes of this will such beneficiary shall be deemed to have predeceased me (or such other person).

**TENTH**: I appoint my husband David Kraus to be my Executor. If my husband does not survive me, or shall fail to qualify for any reason as my Executor, or having qualified shall die, resign or cease to act for any reason as my Executor, I appoint my son Brett Graham as my Executor.

I appoint Brett Graham to be my Trustee.

I direct that no Executor or Trustee shall be required to file or furnish any bond, surety or other security in any jurisdiction.

Any Executor or Trustee, subject to the judicial or non-judicial settlement of the accounts of such Executor or Trustee, may resign at any time by an instrument in writing, signed and acknowledged in duplicate, one counterpart of which shall be delivered to the court in which this will is admitted to probate and the other counterpart of which shall be delivered to the successor Executor or the successor Trustee, as the case may be.

The term "Executor" wherever used herein shall mean the executors, executor, executrix or administrator in office from time to time. The term "Trustee" wherever used herein shall mean the trustees or trustee in office from time to time. Each Executor and Trustee shall have the same rights, powers, duties, authority and privileges, whether or not discretionary, as if originally appointed hereunder.

9



Any provision herein which refers to a statute, rule, regulation or other specific legal reference which is no longer in effect at the time said provision is to be applied shall be deemed to refer to the successor, replacement or amendment to such statute, rule, regulation or other reference, if any, and shall be interpreted in such a manner so as to carry out the original intent of said provision.

Wherever used in this will and the context so requires, the masculine includes the feminine and the singular includes the plural, and vice versa.

**IN WITNESS WHEREOF**, I, Susan Kraus, sign, seal, publish and declare this instrument as my last will and testament this 18th day of October, 2007.

_____
Susan Kraus

The foregoing instrument was signed, sealed, published and declared by Susan Kraus, the above-named Testatrix, to be her last will and testament in our presence, all being present at the same time, and we, at her request and in her presence and in the presence of each other, have subscribed our names as witnesses on the date above written.

_____
Chase Bronfman

residing at

█████████████████████

Greenwich, CT ███████

_____
Heath Loring

residing at

█████████████████████

New York, NY ████████

F:\Data\wpwin60\WPDOCS\WILL\Kraus.Susan.wpd

10

SK

## **AFFIDAVIT OF WITNESSES**

STATE OF NEW YORK, COUNTY OF NEW YORK, ss.

Each of the undersigned, _Chase Bronfman_ residing at _____ _Greenwich CT_ _____, and _Heath Loriag_ _____ residing at _____ _New York, ny_ _____, respectively, being individually and severally duly sworn, did depose and say that: The foregoing last will and testament was subscribed in our presence and sight by Susan Kraus, the Testatrix named therein. The undersigned witnessed the execution of said will of Susan Kraus on the 18th day of October, 2007, at 470 Park Avenue South, 10th Floor, New York, New York 10016. At the time the instrument was so subscribed, the Testatrix declared said instrument to be her last will and testament. The undersigned thereupon signed their names as witnesses at the end of said will at the request of the Testatrix, in the presence of the Testatrix and each other. At the time of so executing said will, in our respective opinions, the Testatrix was at least eighteen years of age, and was of sound mind, memory and understanding, under no constraint, duress, fraud or undue influence, and in no respect incompetent to make a valid will. In our respective opinions, the Testatrix was able to read, write and converse in the English language, and was not suffering from any defect of sight, hearing or speech, or from any other physical or mental impairment which would affect her capacity to make a valid will. Each of us was acquainted with the Testatrix, and we make this affidavit at her request. Said will was shown to us at the time this affidavit was made, and we examined it as to the signature of the Testatrix and our signatures. Said will was executed as a single, original instrument, and not in counterparts. Said will was executed by the Testatrix and witnessed by us under the supervision of Eric M. Kutner, Esq., an attorney-at-law admitted to practice in the State of New York, who stated that the formal requirements of the New York Estates, Powers and Trusts Law regarding the ceremony of execution and attestation of a will had been duly fulfilled and satisfied.

_____
Witness

_____
Witness

Severally subscribed and sworn to before me this 18th day of October, 2007.

_____
Notary Public

**ERIC M KUTNER**
Notary Public, State of New York
No. 02KU5023158
Qualified in Nassau County
Commission Expires Jan. 31, 2010



# Last Will

~((( and )))~

# Testament

~(((( of ))))~

### Susan Kraus

**Dated: October 18, 2007**

**ERIC M. KUTNER**
ATTORNEY AT LAW

# EXHIBIT 11

# W I L L
## OF
### SUSAN KRAUS

I, SUSAN KRAUS, a resident of the County of Los Angeles, State of California, declare this to be my Will.

FIRST:    I hereby revoke all Wills and Codicils previously made by me.

SECOND:    I am a widow. I was previously married to David Kraus, and Richard Graham. I have three children, namely, LESLIE GRAHAM CLAYTON, JED GRAHAM, and BRETT GRAHAM, the issue of my marriage to Richard Graham. I have no other children, nor are there issue of predeceased children.

THIRD:    All of my property is my sole and separate property. It is my intention to dispose of all my estate by this Will.

FOURTH:    I give all my jewelry, clothing, household furniture and furnishings, personal automobiles and other tangible articles of a personal nature, or my interest in any such property, not otherwise specifically disposed of by this Will or any other manner, together with any insurance on the property, to LESLIE GRAHAM CLAYTON and JED GRAHAM. If either LESLIE GRAHAM CLAYTON or JED GRAHAM fails to survive me, I give all my jewelry, clothing, household furniture and furnishings, personal automobiles and other tangible articles of a personal nature, or my interest in any such property, not otherwise specifically disposed of by this Will or any other manner, together with any insurance on the property, to the survivor of them. I specifically do not leave any of my personal property to my son BRETT GRAHAM.

FIFTH:    I hereby give and devise all of rest and the residue of my estate, wherever situated to my daughter LESLIE GRAHAM CLAYTON and my son JED GRAHAM, to be split equally between them.

SIXTH:    Except as otherwise provided in this Will, I have intentionally omitted to provide herein for any of my heirs living at the date of my death. I specifically do not and am not leaving any of my estate to BRETT GRAHAM.

SEVENTH:    If I should ever be in need of a guardian or conservator for my person and/or estate, I nominate LESLIE GRAHAM CLAYTON, to act in such capacity. If

1

Will of Susan Kraus 2024

she should fail to qualify or cease to act, I nominate JED GRAHAM to act as my guardian or Conservator of my person and/or estate.

       EIGHTH:    I nominate and appoint my daughter LESLIE GRAHAM CLAYTON as Executor of this Will to serve without bond.  If she should fail to qualify or cease to act in said capacity, I nominate and appoint my son JED GRAHAM as Executor of this Will to serve without bond.

       NINTH:  I have intentionally and with full knowledge omitted to provide for my heirs, except for such provisions as are made specifically in this Will.  If any person who is or who claims under or through a devisee of this Will, or who, if I died intestate would be entitled to share in my estate, in any manner whatsoever, directly or indirectly contests or attacks this Will, takes any action that would frustrate the dispositive plan contemplated in this Will, conspires or cooperates with anyone attempting to contest, attack, or frustrate this Will, or takes any of the actions set forth in items (A) through (C) below (such person hereinafter referred to as an "Objector"), then I specifically disinherit each such Objector.  In that event, each Objector shall be treated as having predeceased me for all purposes of this Will.  For purposes of this Paragraph, a contest shall include, but not be limited to, the following actions: (A) filing a creditor's claim or prosecution of an action based thereon, (B) filing any petition, complaint, cross-complaint, objection, answer, response, or claim of any kind to challenge the transfer of any property on the grounds that such property was not my property at the time of the transfer, and (C) challenging the validity of (1) this Will, or (2) any instrument, deed, contract, agreement, beneficiary designation, or other document executed by me and pertaining to the disposition of my assets.  Notwithstanding the foregoing, this Paragraph shall not apply to any person solely by reason of such person taking an action described in items (A) through (C) above, or responding to any such action taken by another, if such action or response is unopposed by my Executor (even if my Executor is also a beneficiary of any of my assets under this Will, or otherwise), and my Executor shall not be liable in any manner to any beneficiary or any other person or entity for opposing or not opposing any such action or response.  This Paragraph shall not apply to any charitable beneficiary.  My Executor is authorized to defend, at the expense of my estate, any contest or other attack of any nature on this Will.  Except as provided to the contrary in any Codicil to this Will executed after the date of this Will, this Paragraph shall not apply to such Codicil.

Will of Susan Kraus 2024

TENTH:    As used in this Will, the masculine, feminine, or neuter gender, and the singular or plural number, shall each be deemed to include the others whenever the context so indicates.

The term "my Executor" as used in this Will shall include any personal representative of my estate.

I authorize my Executor to sell, with or without notice, at either public or private sale, any property belonging to my estate, subject only to such confirmation of court as may be required by law.

I subscribe my name to this Will this 10th day of June, 2024 at Alhambra, California.

_Susan Kraus_
SUSAN KRAUS

3

Will of Susan Kraus 2024

On the date indicated below, SUSAN KRAUS, declared to us, the undersigned, that the foregoing instrument, consisting of four (4) pages, including the page signed by us as witnesses, was her Will, and requested us to act as witnesses to it. She thereupon signed this Will, in our presence, all of us being present at the same time. We now, at her request, in her presence and in the presence of each other, subscribe our names as witnesses.

It is our belief that she is of sound mind and memory and is under no constraint or undue influence of any person.

We declare, under penalty of perjury, under the laws of the State of California, that the foregoing is true and correct. Declared and signed by us this 10th day of June, 2024 at Alhambra, California.

_____ residing at    _____

                                                                Pasadena, CA

_____ residing at    _____

                                                               Alhambra, CA

4

# EXHIBIT 12

RE: Account Inquiry

Date: 08/13/2024    Account: Designated Bene Individual ...166    Category: Customer Service

From: Schwab Client Service

Message #: 06919NK6P6JYPY50

Dear Susan Kraus,

Thank you for your message. I am happy to assist with your inquiry.

I reached out to our Trade Support department who is able to view the trade logs to see who placed the trades. They informed me that the trades in 2019 and 2020 were placed under the login SUSANKRAUS on Schwab.com. Was that a previous login ID of yours?

We see that you have a durable power of attorney (DPOA), Leslie Anne Clayton, have you asked them if they placed the trades on your behalf?

If you have any further questions, please feel free to start a live chat on Schwab.com or reply to this secure message. Our representatives are available at any time to assist you.

Sincerely,

Lucas Ganatta
eServices Representative
Client Service & Support
1-800-435-4000

All interactions are subject to recordkeeping and monitoring. The Charles Schwab Corporation provides a full range of brokerage, banking and financial advisory services through its operating subsidiaries. Its broker-dealer subsidiary, Charles Schwab & Co., Inc. (Member SIPC), offers investment services and products, including Schwab brokerage accounts. Its banking subsidiaries, Charles Schwab Bank, SSB (Member FDIC and an Equal Housing Lender), Charles Schwab Premier Bank, SSB (Member FDIC) and Charles Schwab Trust Bank (Member FDIC), provide deposit and lending services and products.

> **Investment and Insurance Products: Not a Deposit • Not FDIC Insured • Not Insured By Any Federal Government Agency • No Bank Guarantee • May Lose Value**

Guard against identity theft by avoiding email and Internet fraud: Be aware that Schwab will never request or disclose your personal information (account number, login password, Social Security Number) in either a non-secure or unsolicited email communication.

**From:** Susan Kraus
**Sent:** 8/12/2024 12:27:34 AM

Can you please look at the #166 account and the trades in 2019 and 2020 and let me know who was doing the trades. It wasn't me and I didn't authorize them. Many thanks

Date: 08/08/2024

Account: Designated Bene Individual ...166

Subject:RE: Account Inquiry

From:Schwab Client Service

Message #:06919NK6P6JYPE8E

Dear Susan Kraus,

Thank you for reaching out to Schwab. I appreciate the opportunity to help you today.

Upon further review, I was able to see that the account ending -166 only has one stock position holding in it currently. It's symbol is ROII for Riskon Interntnl Inc and it was purchased on June 3, 2020. I do not show that there is a US Treasury Note within the account at this time.

It appears that until the end of 2023, the trading authority on the account was given to an Individual Financial Manager or Advisor Francis Financial, Inc. There was also Full Power of Attorney on the account in the name of Brett Graham that has since been removed from the account.

I would like to confirm if this was the account that you were looking for the information on? While looking through each of the accounts, I was unable to find a US Treasury Note holding.

If you have any further questions, please start a live chat on Schwab.com or reply to this secure message. Our representatives are available at any time to assist you. We greatly appreciate your business.

Sincerely,

Danielle Moody
eServices Representative
Client Service & Support
1-800-435-4000

All interactions are subject to recordkeeping and monitoring. The Charles Schwab Corporation provides a full range of brokerage, banking and financial advisory services through its operating subsidiaries. Its broker-dealer subsidiary, Charles Schwab & Co., Inc. (Member SIPC), offers investment services and products, including Schwab brokerage accounts. Its banking subsidiaries, Charles Schwab Bank, SSB (Member FDIC and an Equal Housing Lender), Charles Schwab Premier Bank, SSB (Member FDIC) and Charles Schwab Trust Bank (Member FDIC), provide deposit and lending services and products.

> **Investment and Insurance Products: Not a Deposit • Not FDIC Insured • Not Insured By Any Federal Government Agency • No Bank Guarantee • May Lose Value**

Guard against identity theft by avoiding email and Internet fraud: Be aware that Schwab will never request or disclose your personal information (account number, login password, Social Security Number) in either a non-secure or unsolicited email communication.

**From:** Susan Kraus
**Sent:** 8/7/2024 8:23:19 PM

I am wondering if you can tell me who was buying the stocks and US TSY Note on this account. Many thanks

RE: Account Inquiry

---

Date: 08/13/2024    Account: Designated Bene Individual ...166    Category: Customer Service

From: Schwab Client Service

Message #: 06919NK8P6JYPY50

Dear Susan Kraus,

Thank you for your message. I am happy to assist with your inquiry.

I reached out to our Trade Support department who is able to view the trade logs to see who placed the trades. They informed me that the trades in 2019 and 2020 were placed under the login SUSANKRAUS on Schwab.com. Was that a previous login ID of yours?

We see that you have a durable power of attorney (DPOA), Leslie Anne Clayton, have you asked them if they placed the trades on your behalf?

If you have any further questions, please feel free to start a live chat on Schwab.com or reply to this secure message. Our representatives are available at any time to assist you.

Sincerely,

Lucas Ganatta
eServices Representative
Client Service & Support
1-800-435-4000

All interactions are subject to recordkeeping and monitoring. The Charles Schwab Corporation provides a full range of brokerage, banking and financial advisory services through its operating subsidiaries. Its broker-dealer subsidiary, Charles Schwab & Co., Inc. (Member SIPC), offers investment services and products, including Schwab brokerage accounts. Its banking subsidiaries, Charles Schwab Bank, SSB (Member FDIC and an Equal Housing Lender), Charles Schwab Premier Bank, SSB (Member FDIC) and Charles Schwab Trust Bank (Member FDIC), provide deposit and lending services and products.

> **Investment and Insurance Products: Not a Deposit • Not FDIC Insured • Not Insured By Any Federal Government Agency • No Bank Guarantee • May Lose Value**

Guard against identity theft by avoiding email and Internet fraud: Be aware that Schwab will never request or disclose your personal information (account number, login password, Social Security Number) in either a non-secure or unsolicited email communication.

---

**From:** Susan Kraus
**Sent:** 8/12/2024 12:27:34 AM

Can you please look at the #166 account and the trades in 2019 and 2020 and let me know who was doing the trades. It wasn't me and I didn't authorize them. Many thanks

---

Date: 08/08/2024

Account: Designated Bene Individual ...166

Subject:RE: Account Inquiry

From:Schwab Client Service

Message #:06919NK8P6JYPE8E

Dear Susan Kraus,

Thank you for reaching out to Schwab. I appreciate the opportunity to help you today.

Upon further review, I was able to see that the account ending -166 only has one stock position holding in it currently. It's symbol is ROII for Riskon Internlnl Inc and it was purchased on June 3, 2020. I do not show that there is a US Treasury Note within the account at this time.

It appears that until the end of 2023, the trading authority on the account was given to an Individual Financial Manager or Advisor Francis Financial, Inc. There was also Full Power of Attorney on the account in the name of Brett Graham that has since been removed from the account.

I would like to confirm if this was the account that you were looking for the information on? While looking through each of the accounts, I was unable to find a US Treasury Note holding.

If you have any further questions, please start a live chat on Schwab.com or reply to this secure message. Our representatives are available at any time to assist you. We greatly appreciate your business.

Sincerely,

Danielle Moody
eServices Representative
Client Service & Support
1-800-435-4000

All interactions are subject to recordkeeping and monitoring. The Charles Schwab Corporation provides a full range of brokerage, banking and financial advisory services through its operating subsidiaries. Its broker-dealer subsidiary, Charles Schwab & Co., Inc. (Member SIPC), offers investment services and products, including Schwab brokerage accounts. Its banking subsidiaries, Charles Schwab Bank, SSB (Member FDIC and an Equal Housing Lender), Charles Schwab Premier Bank, SSB (Member FDIC) and Charles Schwab Trust Bank (Member FDIC), provide deposit and lending services and products.

> **Investment and Insurance Products: Not a Deposit • Not FDIC Insured • Not Insured By Any Federal Government Agency • No Bank Guarantee • May Lose Value**

Guard against identity theft by avoiding email and Internet fraud: Be aware that Schwab will never request or disclose your personal information (account number, login password, Social Security Number) in either a non-secure or unsolicited email communication.

---

**From:** Susan Kraus
**Sent:** 8/7/2024 8:23:19 PM

I am wondering if you can tell me who was buying the stocks and US TSY Note on this account. Many thanks

Close

# EXHIBIT  13



# INVESTMENT ADVISORY AGREEMENT

Francis Financial, Inc. ("Firm" or "we"), a Registered Investment Advisor, will provide the undersigned Client ("you") with the financial planning and investment management services chosen by you and described in this Agreement. This Agreement and other attachments, if any, together define the scope, terms, and conditions of the services to be provided to you.

### 1. SERVICES

We will provide you with financial planning services to include:
- An initial conference reviewing your documents, personal information, and assessing your investment objective and risk tolerance;
- Creation of a personal financial plan document; and
- A conference to present and review your personal financial plan and the recommendations contained within that document.
- Ongoing updates to financial plan incorporating new information and circumstances

We will provide you with investment management services, which will include:
- Creating an Investment Policy Statement for your portfolio;
- Buying and selling investments in your account as we deem appropriate according to your personal circumstances and Investment Policy Statement;
- Monitoring the investments in your account on an ongoing basis; and
- Providing you with quarterly reports of your portfolio's holdings and performance.



39 Broadway, Suite 1730 | New York, NY 10006
Office | 212.374.9008 | FrancisFinancial.com

## 2. FEES AND PAYMENT

Our investment management fees vary according to your investment portfolio size and are calculated according to the tiered cumulative fee schedule which follows. The initial fee will be based upon the Custodian's calculation of the assets in your account(s) at the close of market on the first day the account is funded, and will be deducted from the account by the custodian at the Firm's instruction on a pro-rated basis. Thereafter, fees will be calculated using Custodian's asset valuation of your account at the close of market on the final day of the prior quarter.

Investment management fees include accrued interest and pending trades and will be charged quarterly in advance at the rate of one quarter of the annual percentage reflected below.

Your first quarter asset management fees will be the greater of:
1) Our minimum quarterly fee; or
2) The percentage of the monies transferred to Francis Financial.

The billing start date is the earlier of:
1) The day new account forms are delivered to you; or
2) The day we make changes to accounts held outside of Francis Financial.

| Asset Range | Percent of Total Market Value |
|---|---|
| Up to $3,000,000 | 1.25% |
| $3,000,001 to $5,000,000 | 1.00% |
| $5,000,001 to $10,000,000 | 0.90% |
| $10,000,001 to $15,000,000 | 0.80% |
| Above $15,000,001 | 0.70% |

**Minimum required assets under management of $1,000,000 per year.**

(1) You acknowledge that our investment management fees are separate from any transaction, exchange, wire transfer, margin interest or account fees charged by the Custodian holding your portfolio.

(2) You acknowledge that to the extent that your assets are invested in money market or mutual funds, the fees for monitoring those assets are in addition to the fees included in the internal expenses of those funds, which expenses are paid to their own investment managers, and which expenses should be fully disclosed in each fund's prospectus.

(3) You acknowledge that we have no custody of your securities or funds, and this Agreement   requires you to use an outside custodian to hold your portfolio.



FRANCIS FINANCIAL
Plan | Grow | Protect®

39 Broadway, Suite 1730 | New York, NY 10006
Office | 212.374.9008 | FrancisFinancial.com

## 3. YOUR REPRESENTATIONS AND WARRANTIES

    A.  You warrant and represent to us that:

        1. You are legally authorized to enter into this Agreement.

        2. You acknowledge receipt of our Form ADV, Part II as required by Rule 204-3 under the Investment Advisers Act of 1940 and further acknowledge receipt of a copy of this Agreement and a copy of our Privacy Policy.

        3. You will inform the Firm of any corporate affiliations or other matters that may cause securities purchased or sold in the account to be deemed "restricted" securities under applicable federal or state securities law.

        4. You acknowledge that we have and will have other Investment Management clients, that we are advising you on a non-exclusive basis, and that our fees may vary from client to client.

        5. You (a) are not an Insider [as that term is defined under federal securities laws] in any entity and will notify us immediately if you become an Insider; or (b) have informed us of all entities in which you are an Insider.

    B.  You acknowledge the following duties and responsibilities:

        1. To provide us with accurate information on a timely basis.

        2.  To review all statements and correspondence from us and respond in a timely manner with questions or concerns.

        3.  To report to us immediately any significant changes in your financial position, investment objective, or risk tolerance.

## 4. CONFIDENTIALITY

During the performance of services under this Agreement, the Firm shall take reasonable precaution to guard the confidentiality of your records and personal information and shall limit access to authorized employees or agents; provided however, that such records or information shall be provided to any court or agency of the federal, state or local government; and provided further, that such records or information may be reviewed by any entity or person having authority over us pursuant to any applicable rules and regulations of the Securities and Exchange Commission (SEC).



## 5. ENTIRE AGREEMENT/AMENDMENTS/SEVERABILITY/EFFECTIVENESS OF AGREEMENT

This Agreement, including attachments, if any, set forth the entire understanding of the parties hereto concerning the subject matter hereof. There are no prior or contemporaneous written or oral agreements. We shall have the right to amend this Agreement by modifying or rescinding any existing provisions or by adding new provisions. Any such amendment shall be effective thirty (30) days after the Firm has notified you in writing of the change. Should you believe that the amendment(s) are not beneficial, you may terminate this Agreement within the 30-day period by providing written notice as outlined in Section 8 below. Should you terminate this Agreement due to an amendment, your fee for the current billing period will be prorated and any unearned fee paid in advance will be refunded. Should any section of this Agreement be held invalid for any reason, no other section hereof shall be affected and shall remain in full force and effect absent the stricken language. This Agreement is not effective until accepted by Stacy Francis.

## 6. ASSIGNMENT

This Agreement may not be assigned within the meaning of the Investment Advisers Act of 1940, as amended ("the Act"), by any party without the written consent of all parties.

## 7. LIMITATION OF LIABILITY

You acknowledge that we will not review or analyze any other areas of your financial circumstances, other than those areas listed in Section 1 "Services." You agree to hold harmless Francis Financial, Inc., its members, managers, officers, limited partners, employees, agents, affiliates, consultants or assigns from any liability that may arise from any potential negative consequences to you for those areas not included within the scope of this Agreement.

Except for negligence or malfeasance, or violation of applicable law, neither Francis Financial, Inc., nor its members, managers, officers, limited partners, employees, agents, affiliates, consultants or assigns shall be liable for any action performed, or for any errors of judgment in the provision of advisory services. The federal securities laws and certain state securities laws impose liabilities under certain circumstances on persons who act in good faith, and therefore nothing herein shall in any way constitute a waiver or limitation of any rights which you may have under any federal or state securities laws (or ERISA, if the Client is a qualified plan).

You further understand and affirm that there is no guarantee that your investment objectives will be achieved. Neither the Firm nor its members, managers, officers, limited partners, employees, agents, affiliates, consultants or assigns shall have any liability for your failure to inform us of any material change in your financial



39 Broadway, Suite 1730 | New York, NY 10006
Office | 212.374.9008 | FrancisFinancial.com

circumstances which might affect the manner in which you should invest your assets or to provide us with any information as to your financial status as we may reasonably request. You further acknowledge and affirm that your portfolio entails a long-term strategy and that account withdrawals may impair the attainment of your investment objectives.

## 8. TERMINATION

Unless you received the Firm's Form ADV, Part II at least forty-eight (48) hours prior to execution of this Agreement, you have the right to terminate this agreement within five (5) business days of execution without penalty. After the first five (5) business days, this Agreement may be terminated by either party upon written notice to the other party. If you terminate this Agreement after the first five (5) business days, the fee will be applied on a prorated basis and pre-paid fees will be refunded based upon the number of days remaining in the quarter after termination. In addition, we may, in our discretion, terminate this Agreement should assets under management decline to less than $250,000 due to client liquidations or withdrawals. Termination of services will not affect the liabilities or obligations of the parties arising prior to termination.

If this contract is voided, or cancelled by the client prior to the 1st quarter billing, you will be charged the hourly rate of $275 for any work done on your behalf. i.e. transfer of forms, investment recommendations, investing, phone calls, emails, meeting, etc.

## 9. GOVERNING LAW

This Agreement shall be construed under the laws of the State of New York in a manner consistent with the Act and the rules and regulations of the Securities and Exchange Commission.

## 10. DISPUTE RESOLUTION:  MEDIATION, THEN ARBITRATION

Nothing herein shall in any way constitute a waiver or limitation of any rights, which you may have under any applicable federal or state laws. All disputes that may arise between both parties regarding the interpretation or application of this contract and its legal effect must, to the exclusion of any court of law, first be mediated unless the parties can resolve the dispute by mutual agreement, unless prohibited by applicable law.

In the event mediation becomes necessary, the parties will make good faith efforts to select a mutually agreeable mediator. In the event no such agreement on a mediator can be reached, the matter will be mediated through a panel of mediators, with each party choosing one mediator, and then those two selected mediators shall choose the third mediator.



39 Broadway, Suite 1730 | New York, NY 10006
Office | 212.374.9008 | FrancisFinancial.com

In the event the parties cannot come to a resolution through mediation, then the matter in dispute shall be arbitrated by an arbitrator mutually agreed upon by the parties. In the event the parties cannot agree on an arbitrator, then each party shall select one arbitrator and those two selected arbitrators shall select a third arbitrator; and the matter in dispute shall be resolved by a panel of arbitrators so selected. Either party may submit any dispute to mediation thirty (30) days after the other party has been notified as to the nature of the dispute. The procedures will be governed by the rules selected by the panel of arbitrators or mediators or the sole mediator or arbitrator.

The proceedings will be governed by the statutes of the State of New York, and the proceeding will be held in New York, New York. Any such arbitration decision shall be binding on the parties, unless otherwise prohibited by law. The sole arbitrator or panel of arbitrators, if any, may award the winning party necessary costs of mediation and/or arbitration, including but not limited to, reasonable attorney's fees.

## 11. ENTIRE UNDERSTANDING

This Agreement contains the entire understanding and agreement reached by the parties and supersedes all other written or oral exchanges, agreements, arrangements, judgments, and/or negotiations between them, or their legal representatives, and may not be altered, amended, or modified except in writing signed by the party to be charged thereby. Both parties agree that each has not, and does not, make any representation, warranty, or guarantee, except as specifically set forth in this Agreement.

IN WITNESS WHEREOF, we have executed this Agreement this _7_ day of _Nov_, 20_18_.

You acknowledge that this Agreement includes a pre-dispute mediation and arbitration clause located in Section 10.

Stacy Francis, CFP®, CDFA®, CES™       Susan Kraus
Francis Financial, Inc.
President



# ELECTRONIC DELIVERY AUTHORIZATION

Susan Kraus ("Client") authorizes Francis Financial, Inc. to deliver, and the Client agrees to accept, all required regulatory notices and disclosures via electronic mail and/or via the Francis Financial, Inc. secure internet portal, as well as all other correspondence from Francis Financial, Inc. Francis Financial, Inc. shall have completed all delivery requirements upon the forwarding of such document, disclosure, notice and/or correspondence to the Client's last provided email address (or upon advising the Client via email that such document is available on the Francis Financial, Inc. secure internet portal).

Stacy Francis, CFP®, CDFA®, CES™
Francis Financial, Inc.
President

Susan Kraus



FRANCIS FINANCIAL
*Plan | Grow | Protect* ®

39 Broadway, Suite 1730 | New York, NY 10006
Office | 212.374.9008 | FrancisFinancial.com