UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
:
JPMORGAN CHASE BANK, N.A. and J.P. MORGAN   :
SECURITIES,                                                                          :
:
                              Plaintiffs,         :                       25-CV-745 (JMF)
:
        -v-                                               :
:                     OPINION AND ORDER
SUSAN KRAUS,                                                                      :
:
                              Defendant.       :
:
------------------------------------------------------------------------X

JESSE M. FURMAN, United States District Judge:

        This case concerns an arbitration proceeding initiated by Susan Kraus, an 85-year-old woman, against several financial institutions that, she alleges, failed to take adequate steps to prevent her son from siphoning over $8 million from her bank accounts. Plaintiff J.P. Morgan Securities ("JPMS") — which is named as a defendant in the arbitration — and Plaintiff JPMorgan Chase Bank, N.A. ("JPMCB") — which is not — seek to stop the arbitration, arguing principally that Kraus was not a customer of JPMS and, thus, there was and is no agreement to arbitrate her claims against JPMS. They have moved, pursuant to Rule 65 of the Federal Rules of Civil Procedure, for a preliminary injunction halting the arbitration. Kraus, meanwhile, has moved, pursuant to Rule 12(b) of the Federal Rules of Civil Procedure, to dismiss. The Court concludes that, despite Plaintiffs' protestations to the contrary, JPMS did, in fact, agree to arbitration of Kraus's claims. Accordingly, and for the reasons that follow, Plaintiffs' motion for a preliminary injunction is denied and Kraus's motion to dismiss is granted.

**BACKGROUND**

The following facts are taken from the Amended Complaint, ECF No. 25 ("FAC"), and materials submitted in connection with Plaintiffs' motion for a preliminary injunction.

Kraus is an 85-year-old woman who has been experiencing progressive cognitive decline since at least 2018. *See* ECF No. 39 ("Clayton Decl."), ¶ 2. Between 2011 and 2024, Kraus opened four separate accounts with JPMCB. *See* FAC ¶¶ 17-20. In 2019, her son, Brett Graham, to whom Kraus had granted Power of Attorney, began transferring money out of those accounts. *See* ECF No. 31-1, at 12; Clayton Decl. ¶ 3. Over the next four years, Graham transferred $8,427,000 from the accounts in a series of 101 large, round-number transactions. *See* ECF No. 31-1, at 7 n.3. Kraus alleges that Graham then spent the money on himself. *See id.* at 7. As a result of these actions, Graham was charged earlier this year with money laundering and wire fraud. *See* ECF No. 26-1 ("Malecki Decl."), ¶ 20. Graham has since entered a guilty plea. *See id.* ¶ 20.

On October 1, 2024, Kraus filed a Statement of Claim with the Financial Industry Regulatory Authority ("FINRA") against JPMS and several other financial institutions, seeking to recover $9,039,484 in compensatory damages as well as punitive damages and attorneys' fees on the ground that the financial institutions had not taken adequate steps to prevent Graham's misappropriation of her money. *See* ECF No. 31-1; ECF No. 31-2, at 78; ECF No. 31-3, at 79.[1] FINRA — of which JPMS is a member, *see* FAC ¶ 2 — is a "self-regulatory organization established under . . . the Securities Exchange Act of 1934 . . . , and has had the authority to exercise comprehensive oversight over all securities firms that do business with the public." *UBS Fin. Servs., Inc. v. W. Va. Univ. Hosps., Inc.*, 660 F.3d 643, 648 (2d Cir. 2011) (internal

---

[1] Kraus is also suing her son in California state court. *See* Clayton Decl. ¶ 7.

citations and quotations omitted). FINRA members are bound by FINRA's rules and regulations, which, as relevant here, mandate arbitration of "certain disputes with customers before FINRA upon the customer's demand." *Pictet Overseas Inc. v. Helvetia Trust*, 905 F.3d 1183, 1187 (11th Cir. 2018) (citing FINRA Rule 12200).

In response to Kraus's Statement of Claim — in which she asserted that she and her husband had "had a decades-long relationship" with JPMS, ECF No. 1-1, at 16 — FINRA issued a standard letter designating JPMS as a "Mandatory" party to the arbitration. *See* ECF No. 31-6, at 1. On November 20, 2024, JPMS submitted an answer to the Statement of Claim along with a signed "FINRA ARBITRATION Submission Agreement," which stated in relevant part as follows:

1. The undersigned parties . . . hereby submit the present matter in controversy, as set forth in the attached statement of claim, answers, and all related cross claims, counterclaims and/or third-party claims which may be asserted, to arbitration in accordance with the FINRA By-Laws, Rules, and Code of Arbitration Procedure.

2. The parties hereby state that they or their representative(s) have read the procedures and rules of FINRA related to arbitration, and the parties agree to be bound by these procedures and rules.

3. . . . . The parties further agree and understand that the arbitration will be conducted in accordance with the FINRA Code of Arbitration Procedure.

ECF No. 31-8 ("Submission Agrmt."), at 3. In a cover letter accompanying the Submission Agreement, JPMS wrote as follows: "JPMS LLC submits this Submission Agreement because it is required to do so but reserves all rights, including to move to dismiss this arbitration because Claimant is not a customer of JPMS LLC." *Id.* at 2.

On January 24, 2025, more than two months *after* JPMS submitted its answer and signed Submission Agreement to FINRA, Plaintiffs filed this lawsuit seeking a declaration and injunction preventing the FINRA arbitration from proceeding against JPMS. ECF No. 1. In their Complaint — since amended — they argued that Kraus's claims against JPMS were not

3

subject to arbitration in FINRA because Kraus was never a "customer" of JPMS within the meaning of FINRA Rule 12200.  *See id.* ¶¶ 26, 31, 33; *see also* FAC ¶¶ 26, 31, 33, 36.  They further contended (and still contend) that separate agreements between Kraus and JPMCB require adjudication of her claims either in court or in an arbitral forum other than FINRA.  *See* FAC ¶¶ 16, 22.

On February 14, 2025, JPMS filed a motion to dismiss in the FINRA arbitration on the ground that Kraus was not a "customer" of JPMS.  *See* ECF No. 31-9, at 2-3.  In a footnote, JPMS alerted the arbitral panel that it (along with JPMCB) had filed this lawsuit and stated that "[a]ll rights are reserved."  *Id.* at 2 n.2.  On June 12, 2025 — weeks after Kraus filed her motion to dismiss Plaintiffs' Complaint in this action, *see* ECF No. 26 — the FINRA arbitrators summarily denied JMPS's motion to dismiss "with prejudice."  ECF No. 31-17, at 5.  Eight days later, Plaintiffs filed their motion here seeking a preliminary injunction preventing Kraus from arbitrating her claims before FINRA.  *See* ECF No. 29.  Both Plaintiffs' motion for a preliminary injunction and Kraus's motion to dismiss are now fully submitted.

## DISCUSSION

Plaintiffs' motion for a preliminary injunction and Kraus's motion to dismiss turn on the same issue: whether the arbitrability of Kraus's claims is a question for the Court or for the arbitrator.  Ordinarily, "there is a general presumption that the issue of arbitrability should be resolved by the courts."  *Contec Corp. v. Remote Sol., Co.*, 398 F.3d 205, 208 (2d Cir. 2005); *accord Coinbase, Inc. v. Suski*, 602 U.S. 143, 149 (2024).  "That said, the parties themselves may provide that the arbitrator, not the court, shall determine whether an issue is arbitrable."  *PaineWebber Inc. v. Bybyk*, 81 F.3d 1193, 1198 (2d Cir. 1996).  Specifically, "the arbitrability of a given issue is a question for the court *unless* there is 'clear and unmistakable' evidence from

4

the arbitration agreement, as construed by the relevant state law, that the parties intended that the question of arbitrability shall be decided by the arbitrator." *Id.* at 1198-99 (citing *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944-45 (1995)). Such intent can be inferred where the parties' agreement broadly refers "any and all controversies" to arbitration. *Id.* at 1199-200. The same is true where an agreement incorporates by reference an arbitration code, which itself empowers the arbitrator to answer the relevant question of arbitrability. *See id.* at 1202.

Applying these standards here, the Court easily concludes that the question of the arbitrability of Kraus's claims is for the FINRA arbitrators, not a court, to decide. That is because, as courts in this Circuit have consistently held, the FINRA Submission Agreement — to which JPMS agreed — "constitutes a valid, binding agreement to submit *all issues, including the threshold issue of arbitrability*, to the arbitration panel." *First Montauk Sec. Corp. v. Menter*, 26 F. Supp. 2d 688, 689 (S.D.N.Y. 1998) (emphasis added); *see Bayme v. GroupArgent Sec., LLC*, No. 10-CV-6213 (GBD), 2011 WL 2946718, at *4 (S.D.N.Y. July 19, 2011); *accord Abraham v. DeLeeuw,* No. SA-CV-1000038 (JVS) (ANX), 2010 WL 11595855, at *1 (C.D. Cal. Mar. 22, 2010) (holding that the FINRA Submission Agreement is an independent agreement to arbitrate); *Smith v. Bartolini*, No. 01 C 4311, 2003 WL 21148940, at *8–9 (N.D. Ill. May 14, 2003) (same); *Dean Witter Reynolds, Inc. v. Fleury*, 138 F.3d 1339, 1342 (11th Cir. 1998) (same); *Fisher v. Wheat First Sec., Inc.*, 62 Fed. App'x 472, 475 (4th Cir. 2003) (same); *Traderight Sec., Inc. v. Kirschman*, 2011 WL 614090, *3 (N.D. Ill. 2011) (same); *Gates v. Veravest Invs., Inc.,* No. CV-04-146-ST, 2004 WL 1173145, at *9 (D. Or. May 25, 2004) (same).

That conclusion is compelled for two independent reasons. First, on its face, the language of the Submission Agreement — to wit, that the parties agree to submit "the present matter in controversy, as set forth in the attached statement of claim, answers, and all related

5

cross claims, counterclaims and/or third-party claims which may be asserted" to arbitration, Submission Agrmt. 3 — is "substantially similar to an agreement that requires 'any and all' disputes to be submitted to the arbitrator." *Bayme*, 2011 WL 2946718, at *4. It therefore "evidence[s] clear and unmistakable intent to submit the arbitrability question to arbitration." *Id.*; *see also First Montauk*, 26 F. Supp. 2d at 689 (stating that the Submission Agreement's "flat unqualified, formal agreement to 'submit the present matter in controversy to arbitration' is 'clear and unmistakable evidence' that all disputed issues including arbitrability are being submitted to arbitration" (cleaned up)).

Second, the FINRA Submission Agreement specifies that the parties submit their controversy to arbitration "in accordance with the FINRA By-Laws, Rules, and Code of Arbitration Procedure" and that "the parties agree to be bound by" the "procedures and rules of FINRA relating to arbitration." ECF No. 31-8, at 2. FINRA Rule 12409, in turn, provides that the arbitration panel "has the authority to interpret and determine the applicability of all provisions under the Code" and that "[s]uch interpretations are final and binding upon the parties." That language plainly encompasses the question of arbitrability at issue here: whether and how FINRA Rule 12200, the provision of the FINRA Code limiting arbitration to "customer[s]" of a FINRA member, "appli[es]" to Kraus. It follows that "the parties agreed that the arbitrators would be 'empowered'" to answer that question and "agreed further that any such determination would be 'final and binding.'" *Alliance Bernstein Inc. Rsch. & Mgmt., Inc. v. Schaffran*, 445 F.3d 121, 127 (2d Cir. 2006); *see, e.g.*, *Murray v. UBS Sec., LLC*, No. 12-CV-5914 (KPF), 2014 WL 285093, at *13 (S.D.N.Y. Jan. 27, 2014).

Plaintiffs' arguments to the contrary are unconvincing. First, Plaintiffs repeatedly invoke the presumption that the "threshold issue of arbitrability [is to] be resolved by the courts." ECF

6

No. 30 ("Pl.'s PI Mem."), at 7; *see id.* at 19, 29. True enough. But it is also true that "[p]arties can include in the arbitration agreement a provision delegating the question of arbitrability to the arbitrator." *Davitashvili v. Grubhub Inc.*, 131 F.4th 109, 117 (2d Cir. 2025). Citing a host of cases, Plaintiffs insist that "there is no legitimate dispute" that, in this case, the question has not been delegated. Pl.'s PI Mem. 19. But the cases Plaintiffs cite are either inapposite or contrary to the law of this Circuit. Most of them, including all from within this Circuit, featured litigants who, unlike JPMS, expressly declined to sign a FINRA Submission Agreement. *See, e.g.*, *Citigroup Glob. Markets, Inc. v. Abbar et al.*, No. 11-CV-6993 (LLS) (S.D.N.Y.), ECF No. 17, at 17 (stating that plaintiff had "failed and refused to arbitrate the dispute alleged in the FINRA Arbitration"); *Citigroup Glob. Markets, Inc. v. VCG Special Opportunities Master Fund Ltd.*, No. 8-CV-5520 (BSJ) (KNF) (S.D.N.Y.), ECF No. 21, at 5 n.2 (stating that the party seeking to enjoin FINRA arbitration had not yet responded to the Statement of Claim in the FINRA arbitration); *UBS Securities LLC v. Leitner*, No. 17-CV-1365 (LTS) (S.D.N.Y.), ECF No. 19, at 8 (stating that "no proceedings ha[d] taken place before FINRA" and the parties had "agreed to stay [the plaintiff's] time to answer until the Court reache[d] a decision" on the motion for a preliminary injunction and the cross motion to compel arbitration); *Land v. Rokah*, No. 23-CV-793 (RMB) (GS) (S.D.N.Y.), ECF No. 1, ¶ 12 (stating that "instead of submitting to arbitration," the plaintiff had "informed FINRA and [the] Defendants of his intent to file [that] action for declaratory and injunctive relief"). The others, such as *Waked v. Kerr,* No. 22-CV-0596 (JB) (JMR), 2024 WL 1539788 (D.N.M. Apr. 9, 2024), are contrary to the weight of authority within the Second Circuit, if not in direct conflict with binding Second Circuit precedent, *compare id.* at *36 (stating that the FINRA Code "provide[s] primarily that FINRA arbitrators may interpret the substance . . . and procedure of the FINRA code, but not the outstanding existence of an

7

agreement to arbitrate"), *with Alliance Bernstein Inc. Rsch. & Mgmt., Inc.*, 445 F.3d at 127 (stating that where "[t]he crux of the dispute as to arbitrability . . . concerns the interpretation and applicability of a provision of the [FINRA] Code," the FINRA Code "submit[s] [that] dispute[] over the interpretation of the Code rules to arbitration"). Accordingly, the Court declines to follow them.

Plaintiffs also contend that JPMS never agreed to arbitrate because it "expressly reserved its rights, including to move to dismiss" in its letter accompanying the Submission Agreement. Pl.'s PI Mem. 26 n.13; *see also* ECF No. 43 ("Pl.'s PI Reply"), at 7. But even assuming *arguendo* that a party could avoid the otherwise clear implications of the FINRA Submission Agreement through a reservation of rights, JPMS's reservation here did not do the trick. It merely "reserve[d] all rights, including to move to dismiss this arbitration because [Kraus] is not a customer of JPMS LLC." ECF No. 31-8, at 2. It said nothing about reserving JPMS's rights to have that issue determined by a court rather than the arbitrator. In fact, JPMS already did exactly what it "reserved" the right to do: It moved to dismiss Kraus's claims before FINRA on the ground that she was "not a customer of JPMS LLC." That JPMS may have subjectively believed that it was also reserving the right to have that issue decided by a court is of no moment. "[I]t is hornbook law that the uncommunicated subjective intent of a party is irrelevant in interpreting a contract." *First Montauk*, 26 F. Supp. 2d at 689.[2]

Plaintiffs' final argument is that, even if JPMS did agree to submit the question of arbitrability to the arbitrators by signing the Submission Agreement, JPMS should not be held to

---

[2] The fact that JPMS referenced this action and the relief it seeks here in a footnote in its motion to dismiss filed with the FINRA arbitrators, *see* ECF No. 31-9, at 2 n.2, is also immaterial. JPMS filed its motion to dismiss months after it had signed the Submission Agreement. Plaintiffs cite no authority for the proposition that, by dropping a footnote in that motion, JPMS could amend the terms of a contract to which it had previously agreed.

its agreement because, under FINRA's rules, it "had no choice but to" sign the Agreement. Pl.'s PI Reply 6. This argument — which is effectively an assertion of the defense of duress — was squarely rejected by the Second Circuit in *Safra Securities, LLC v. Gonzalez*, 764 Fed. App'x 125 (2d Cir. 2019) (summary order). There, a party sought to enjoin a FINRA arbitration despite having signed the Submission Agreement, arguing that it had done so "strictly as a result of the threats and blatant coercion of the FINRA case administrator." *Id.* at 126. Even so, the Second Circuit held that the party had "failed plausibly to plead any indicia of coercion by FINRA that could rise to the level of duress and render the Submission Agreement voidable." *Id.*; *see also Waked*, 2024 WL 1539788, at *43 (holding that "the pressure exerted" on a party to sign a FINRA submission agreement "did not rise to the level of duress"). So too here. Among other things, Plaintiffs could not plausibly allege the elements of duress because, as the cases Plaintiffs themselves cite in their memoranda — and which the Court discusses above — make plain, JPMS had alternatives: It could have refused to arbitrate and sought immediate preliminary relief in court. *See, e.g.*, *Kamerman v. Steinberg*, 891 F.2d 424, 431 (2d Cir. 1989) (observing that a party arguing duress must show that "the circumstances permitted no other alternative").

In sum, by signing the Submission Agreement, JPMS chose to submit the question of arbitrability it presses here — namely, that Kraus was not its "customer" within the meaning of FINRA Rule 12200 — to the FINRA arbitrators. Having made that choice (not to mention, having already submitted the question to the FINRA arbitrators and lost), JPMS may not now obtain relief from a court. It follows that Plaintiffs' motion for a preliminary injunction must be and is DENIED. *See, e.g.*, *New York ex rel. Schneiderman v. Actavis PLC*, 787 F.3d 638, 650 (2d Cir. 2015) (holding that a party must establish either a likelihood of success on the merits or sufficiently serious questions going to the merits to obtain preliminary injunctive relief); *see*

9

*also, e.g.*, *Lawrence v. Wilder Richman Sec. Corp.*, 417 Fed. App'x 11, 14 (2d Cir. 2010) (summary order) \("A party suffers no legally cognizable injury at all, let alone irreparable injury, by being compelled to engage in arbitration to which he has contractually agreed.").

It follows as well that Plaintiffs' Complaint must be and is DISMISSED with prejudice, as Kraus moves to dismiss on the ground that JPMS consented through the Submission Agreement to submit the question of arbitrability to the arbitrators, *see* ECF No. 26-2 ("Def.'s MTD Mem."), at 8-11, and the Court may consider the Agreement because it is integral to, if not incorporated into, the Complaint, *see* FAC ¶ 31; *see also, e.g.*, *Cullum v. Wyndham Hotels & Resorts Corp.*, No. 22-CV-9700 (LTS) (SN), 2024 WL 552494, at *5 (S.D.N.Y. Feb. 12, 2024) (considering an agreement containing an arbitration clause on a motion to dismiss on the ground that it was "integral to the complaint and . . . part of the record before the Court").[3] In fact, that result would be warranted even if Kraus had not moved to dismiss, as the Court's conclusion that JPMS consented to arbitration — and that its consent extends to the question of arbitrability that it raises — leaves "nothing further to litigate." *Goldman, Sachs & Co. v. City of Reno*, 747 F.3d 733, 738 (9th Cir. 2014); *see also First Montauk*, 26 F. Supp. 2d at 689 (concluding that the plaintiff's consent to arbitration mandated not only denial of its motion for a preliminary injunction staying the arbitration but also dismissal of its complaint with prejudice).

---

[3] Kraus also moves to dismiss JPMCB's claims on the ground that it lacks standing. *See* Def.'s MTD Mem. 26-28. Ordinarily, the Court would have to address that issue first, as standing is jurisdictional. *See, e.g.*, *Ross ex rel. Dunham v. Lantz*, 408 F.3d 121, 123 (2d Cir. 2005) (per curiam). But "[i]t is well settled that where . . . multiple parties seek the same relief, 'the presence of one party with standing is sufficient to satisfy Article III's case-or-controversy requirement.'" *Centro de la Comunidad Hispana de Locust Valley v. Town of Oyster Bay*, 868 F.3d 104, 109 (2d Cir. 2017) (quoting *Rumsfeld v. Forum of Acad. & Inst. Rights, Inc.*, 547 U.S. 47, 52 n.2 (2006)). Here, both JPMS and JPMCB seek the same relief — a declaration and injunction prohibiting Kraus from proceeding with the FINRA arbitration, FAC 12 — and JPMS, which is named as a defendant in the arbitration, indisputably has standing. The Court therefore need not and does not address Kraus' standing arguments.

## CONCLUSION

For the foregoing reasons, Plaintiffs' motion for a preliminary injunction is DENIED, Kraus's motion to dismiss is GRANTED, and the case is dismissed. The Clerk of Court is directed to terminate ECF Nos. 26, 29; to enter judgment in Kraus's favor; and to close the case.

SO ORDERED.

Dated: August 18, 2025
       New York, New York

_____
JESSE M. FURMAN
United States District Judge